UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER PASTRANA,<br><br>        Petitioner,<br><br>    v.<br><br>KATHLEEN ALLISON, Warden,<br><br>        Respondent. | 1:08-cv–01820-OWW-SMS-HC<br><br>ORDER DIRECTING THE CLERK TO SUBSTITUTE KATHLEEN ALLISON AS RESPONDENT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S FIRST, SECOND, AND FIFTH CLAIMS<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS WITHOUT LEAVE TO AMEND PETITIONER'S THIRD AND FOURTH CLAIMS<br><br>FINDINGS AND RECOMMENDATIONS TO DIRECT THE ENTRY OF JUDGMENT AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:<br>THIRTY (30) DAYS** |

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is the petition, which was filed on November 17, 2008. Respondent filed an answer on April 3, 2009, and Petitioner filed a timely traverse and supporting memorandum on

1

April 5, 2010.

I. Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Petitioner, an inmate of the California Substance Abuse Treatment Facility and State Prison at Corcoran, California (CSATF), claims that he suffered violations of his constitutional rights when he was found unsuitable for parole by the California Board of Parole Hearings (BPH) after a hearing held on January 31, 2007, at the CSATF. (Pet., doc. 1-1, 67, 1.) Thus, violations of the Constitution are alleged.

Further, the decision challenged was made at Corcoran, California, which is located within the jurisdiction of this Court. 28 U.S.C. §§ 2254(a), 2241(a), (d).

Respondent Ken Clark answered the petition on behalf of Warden Clark. (Doc. 10, 1:21-22.) Petitioner thus named as a respondent a person who had custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing

Section 2254 Cases in the District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, the Court concludes that it has jurisdiction over the proceeding and over the Respondent.

## II. Substitution of Respondent

Fed. R. Civ. P. 25(d) provides that a court may at any time order substitution of a public officer who is a party in an official capacity whose predecessor dies, resigns, or otherwise ceases to hold office.

Although Ken Clark was the warden at CSATF when the petition and answer were filed, reference to the official web site of the California Department of Corrections and Rehabilitation reflects that the current acting warden is Kathleen Allison.[1]

The Court concludes that Kathleen Allison is an appropriate respondent in this action.

The Clerk is therefore DIRECTED to substitute Kathleen Allison, Acting Warden, as Respondent, in place of Ken Clerk.

## III. Background

Petitioner raises the following claims: 1) Petitioner's agreement to plead guilty to second degree murder and to be sentenced to fifteen years to life with the possibility of parole was subjected to an "ex post facto violation of his reasonable understanding of his plea agreement" when he was not released on

---

[1] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official web sites. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Daniels-Hall v. National Education Association -F.3d -, 2010 WL 5141247, *4 (No. 08-35531, 9th Cir. Dec. 20, 2010).

3

parole; 2) Petitioner's guilty plea was invalid as involuntary and unintelligent, and/or the result of ineffective assistance of counsel, because he was not released on parole after fifteen years; 3) the BPH violated state statutes, BPH rules, and Petitioner's Fourteenth Amendment right to due process of law when it determined that Petitioner was not suitable for parole; 4) the BPH was enforcing a "no-parole" policy; and 5) when the BPH considered facts concerning his crime and/or dismissed counts that were not found by a jury or admitted by Petitioner, it violated Petitioner's Sixth and Fourteenth Amendment rights to due process of law and protection against ex post facto laws. (Pet. 8-18.)

On December 9, 1983, Petitioner pled guilty to second degree murder. (Doc. 10-1, 36-37.)[2] Review of the transcript shows that the parties had jointly recommended a referral to the California Youth Authority (CYA) to determine if Petitioner could be housed there, and the court agreed to sentence him to CYA if the authority recommended retaining him there. (Id. at 37:6-15.) Petitioner was informed that he could face state prison if CYA did not accept him or desire to retain him. (Id. at 38:8-13.) The court expressly informed Petitioner that if he did not stay at CYA, he "would be facing a 15-to-life sentence," and when queried, Petitioner stated that he understood that. (Id. at 38:14-22.) Petitioner was also told that if he were sentenced to prison, he would be subject to a five-year parole term after

---

[2] The transcripts of the entry of Petitioner's guilty plea and the sentencing proceedings have been lodged with this Court by Respondent in support of the answer.

4

release from prison. (Id. at 38:24-28.) When asked if there had been any other promises to induce his plea other than a second degree murder rather than first degree, Petitioner answered, "No." (Id. at 39:7-11.) Petitioner informed the court after waiver of his rights that he had no questions. (Id. at 41:13-20.)

On April 5, 1984, Petitioner was sentenced. (Doc. 10-2, 41-42.) The Superior court recited the terms of the plea at the sentencing hearing:

> Pursuant to the case settlement arrived at by the parties, the defendant entered his plea of guilty to murder in the second degree with the indication by the court at the request of the People and Defense that the matter would be referred to California Youth Authority by way of 707.2, Welfare and Institutions Code commitment, in view of the defendant's age, namely, 17 years of age, and that the term prescribed by law, namely, 15 to life, would be served in CYA, California Youth Authority, if the defendant were accepted there and in state prison if he were rejected.

(Id. at 42:1-11.) Petitioner was rejected by CYA, and the court sentenced him to state prison for the "term prescribed by law," which the sentencing court recited was "15 years to life." (Id. at 44:2-5.) The Court stated the following concerning parole at the time sentence was imposed:

> You will be placed on a period of parole for, I believe, up to five years after you are released from prison. And if you violate parole, of course you can be returned to state prison for an additional five years.
> Do you understand?

(Id. at 44:11-15.) Petitioner responded affirmatively. (Id. at 44:16.) Credit for 414 days actual time and good time/work time was given. (Id. at 45.)

In a declaration submitted with the petition, Petitioner declared that his trial counsel assured him that he would "only

5

serve a minimum term of 10-15 years, and then be released from custody if I successfully programmed while in State Prison." (Pet. 6:5-9.)  He further declared:

> When I was not released at the end of 10 years, I thought perhaps that I would be released at the next Board of Parole Hearings.  When I was again found "unsuitable" and a "danger to the public safety" by the following Board Commissioners, I then began to suspect the rumors of a "NO-PAROLE POLICY" which specifically targeted murderers might be true.

(Pet., decl. of Javier Pastrana, 6:17-21.)  Petitioner now believes that his only hope for freedom is to be re-sentenced to time served and to be released on parole, or to be discharged completely because of a gross miscarriage of justice resulting from his being punished in effect for first degree murder, a sentence he had intended to avoid by his agreement to plead guilty to second degree murder.  (Id. at 7.)  Petitioner describes his continued imprisonment as a re-characterization by the BPH and the California governor of his crime as a first degree murder.  (Id.)

IV. Untimeliness of Claims concerning Petitioner's Plea Bargain

Insofar as Petitioner alleges in the first and second claims that the denial of parole violated his plea agreement or rendered his guilty plea involuntary, Respondent argues that the petition is untimely.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

6

>    (A) the date on which the judgment became
> final by the conclusion of direct review or the
> expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to
> filing an application created by State action in
> violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from
> filing by such State action;
>
>    (C) the date on which the constitutional right
> asserted was initially recognized by the Supreme Court, if
> the right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral review;
> or
>
>    (D) the date on which the factual predicate
> of the claim or claims presented could have been
> discovered through the exercise of due diligence.
>
>   (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The Court must determine when the one-year limitation period began to run. With respect to Petitioner's application, the Court understands Petitioner's primary challenge to be to the decision that he was not suitable for parole. To the extent that Petitioner challenges an administrative decision of the BPH and not the judgment of conviction, the provisions of 28 U.S.C. § 2244(d)(1)(A) concerning the finality of the judgment of conviction do not apply because a decision of a state parole board is not a final judgment within the meaning of § 2244(d)(1)(A). Redd v. McGrath, 343 F.3d 1077, 1081-82 (9th Cir. 2003). Instead, the running of the statute is determined pursuant to § 2244(d)(1)(D). Redd v. McGrath, 343 F.3d at 1082.

Likewise, to the extent that Petitioner is challenging the validity of his plea, Petitioner is challenging a judgment of the

7

state court.  However, Petitioner challenges his plea on the basis of events that transpired long after his sentencing hearing.  Application of § 2244(d)(1)(D) requires the Court to determine the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence.  28 U.S.C. § 2244(d)(1)(D).

Petitioner was sentenced in 1984.  Petitioner filed his petition here on November 17, 2008.  Petitioner's alleged understanding of his plea agreement was that he was to serve a "minimum" of ten to fifteen years.  (Pet. 6:7.)  The Court notes that literally understood, Petitioner's allegations reflect that he was informed that ten to fifteen years was the <u>least</u> he would serve, not the <u>most</u>.  Nevertheless, even if Petitioner's reasonable understanding was that the <u>most</u> he would serve would be ten to fifteen years, that would mean that Petitioner's reasonable understanding of his plea bargain was contradicted by his continued confinement by 1995 at the earliest (after the passage of eleven years) and 2000 at the latest (after the passage of 15 years).  However, Petitioner did not file his petition here until 2008.  Thus, the one-year statutory period was exceeded.

Although a properly filed state petition will toll the running of the statute, Petitioner did not file a petition for writ of habeas corpus in a state court until he filed a petition with the Los Angeles County Superior Court on June 22, 2007. (Pet. 13.)  Thus, Petitioner is not entitled to any statutory tolling.  Petitioner does not state any grounds for, or mount any argument concerning, equitable tolling.

8

The Court thus concludes that to the extent that Petitioner's claim is interpreted as retroactively attacking the validity of his guilty plea, it is untimely.

V.   Denial of Petitioner's Claim concerning Parole

Respondent argues that even if Petitioner's claims concerning his plea's foreclosing denial of parole were timely, Petitioner has not shown that he is entitled to any relief. (Ans. 4:12-15.)

To the extent that Petitioner is contending that denial of parole was foreclosed by the terms of his plea, Petitioner has not shown his entitlement to habeas corpus relief. Petitioner alleges that he was informed that he would spend a minimum of ten to fifteen years in prison. However, the clear record of the plea proceedings reflects that Petitioner acknowledged in open court that the agreement was to enter a guilty plea in exchange for a sentence of fifteen years to life with possible release on parole thereafter; no other promises were made, and there was no promise that release on parole would occur at any specific time.

Petitioner states that the failure to advise him at the time of his plea that he was being sentenced to life without the possibility of parole rendered his plea unintelligent or involuntary. (Pet. 25.) However, the record clearly shows that Petitioner was sentenced to life <u>with</u> the possibility of parole. Further, the fact that Petitioner has been found unsuitable for parole does not establish that Petitioner was actually sentenced to life without the possibility of parole.

Petitioner declared that trial counsel assured him of serving a minimum of ten to fifteen years followed by release if

9

Petitioner successfully programmed.

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  A petitioner must identify the acts or omissions of counsel that are alleged to have been deficient. Strickland, 466 U.S. 690.  This standard is the same standard that is applied on direct appeal and in a motion for a new trial. Strickland, 466 U.S. 697-98.

Here, counsel's assurance was in essence a representation of possible release after Petitioner served at least ten to fifteen years in prison, and it was expressly based on successful programming, a condition that was and is substantially amorphous and uncertain with respect to both the substance of success and the identity of the entity that would determine whether or not success had been achieved.

Thus, the Court concludes that Petitioner has not shown that the BPH's finding that he was unsuitable was inconsistent with,

10

or significantly undermined, a knowing and voluntary plea. Further, Petitioner has not alleged specific facts showing that counsel failed to render ineffective assistance because counsel's alleged representations have not been shown to have been false or substandard.

The Court thus concludes that insofar as Petitioner claims that the denial of parole was inconsistent with or precluded by his plea, Petitioner has not shown that he was entitled to relief. Petitioner's first and second claims should be denied.

IV. <u>Failure to State a Cognizable Due Process Claim</u>

Petitioner alleges that his rights under the Due Process Clause were violated by the denial of his parole because the BPH actually had a policy to deny parole to murderers, the BPH failed to apply the law governing the parole suitability factors properly, and there was an absence of "some evidence" to support the BPH's findings that Petitioner continued to pose a threat to public safety. (Pet. 16-17, 25-27)

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>

of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[3] Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the petitioners had received the process that was due:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether

---

[3] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. Id. at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. Id. at 13.  In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. Id. at 15.

[the petitioners] received due process.
Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the federal Due Process Clause.  Id. at 862-63.

Here, in his third and fifth claims, Petitioner challenges the sufficiency of the evidence to support the BPH's decision. He also challenges the BPH's consideration of facts concerning his commitment offense or dismissed counts that were not found by a jury or admitted by Petitioner.  Petitioner is thus challenging the merits of the application of California's "some evidence" standard to the facts in his case.

However, Petitioner has not stated facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement. Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

Further, in Petitioner's first claim concerning consideration of the facts of crimes of which Petitioner was not convicted and which may have been dismissed pursuant to a plea bargain, Petitioner is again requesting this Court to evaluate the evidence relied upon in the state proceedings.  As previously set forth, Swarthout forecloses this claim.

To the extent that Petitioner's claims concerning the propriety of the BPH's finding of unsuitability rest on state

13

1  law, they are not cognizable on federal habeas corpus.  Federal
2  habeas relief is not available to retry a state issue that does
3  not rise to the level of a federal constitutional violation.
4  <u>Wilson v. Corcoran</u>, 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle</u>
5  <u>v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Alleged errors in the
6  application of state law are not cognizable in federal habeas
7  corpus.  <u>Souch v. Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).
8       Accordingly, the Court concludes that insofar as Petitioner
9  seeks to review the substance of the BPH's decision in the third
10 and fifth claims, Petitioner does not state a claim for a
11 violation of due process of law or other basis for habeas relief.
12      Insofar as Petitioner complains of a no-parole policy,
13 Petitioner has not alleged any facts pointing to a possibility of
14 relief.
15      A petition for habeas corpus should not be dismissed without
16 leave to amend unless it appears that no tenable claim for relief
17 can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440
18 F.2d 13, 14 (9th Cir. 1971).
19      The Court notes that Petitioner does not allege that the
20 procedures used for determination of his suitability for parole
21 were deficient because of the absence of either an opportunity to
22 be heard or a statement of reasons for the ultimate decision
23 reached.  The documentation submitted by Petitioner demonstrates
24 that Petitioner attended the parole hearing, responded to the
25 questions asked by the commissioners, and made a statement to the
26 board.  Petitioner had reviewed his records before the hearing,
27 and he waived the right to be represented by counsel at the
28 hearing.  Petitioner was present when the decision was rendered

14

and the reasons for the decision were stated. (Pet., doc. 1-1, 3-80, 5, 11-66, 64-66, 67-80.)  Petitioner thus received a statement of the Board's reasons for finding him unsuitable for parole.

It therefore appears from the face of the petition and the attached documentation that Petitioner received the minimal due process that was required.  He was not denied a liberty interest in parole without the requisite due process of law.  Further, it appears that Petitioner could not state a tenable due process claim for relief were leave to amend granted.

Accordingly, it will be recommended that Petitioner's due process claims concerning the sufficiency or propriety of the evidence considered by the BPH, and his claim consisting of generalized allegations of a "no-parole policy," be dismissed without leave to amend.

### V. Consideration of the Facts of Petitioner's Commitment Offense

Petitioner alleges generally that the BPH considered unspecified facts of the crime that were not proven or found by a jury or admitted by Petitioner when he pled guilty to second degree murder.[4]  (Pet. 18.)  However, Petitioner does not specify the facts to which he refers.

The transcript of the hearing before the BPH reflects that while under the influence of drugs to the extent that he could not remember killing the victim, Petitioner assaulted a

---

[4] The Court notes that at all times pertinent to Petitioner's case, Cal. Pen. Code § 189 defined first degree murder as murder perpetrated by various weapons or devices, murder perpetrated in the commission of or attempt to commit specified crimes, or murder perpetrated by lying in wait, torture, or any other kind of willful, deliberate, and premeditated killing; all other kinds of murder were categorized as second degree murder.  It does not appear that Petitioner's offense necessarily involved any of the circumstances that would have rendered it a first degree murder.

15

seventeen-year-old female visitor who owed him money and strangled her.  (Pet., doc. 1-1, 13-16, 35-37.)  Years before the hearing, Petitioner had supplied the version of the offense that was considered by the BPH.  (Id. at 14.)  The BPH considered Petitioner's offense to have been extremely callous and cruel because Petitioner had strangled a nude young woman during a sexual encounter and then removed the body from the house.  (Pet, doc. 1-1, 67-69.)

Reference to the transcript of Petitioner's entry of his guilty plea reflects that Petitioner was informed that he gave up his right to remain silent and waived that right; he further affirmed that he understood that the court would obtain a probation report and a report from the Youth Authority, and that Petitioner would be sentenced on the basis of the report.  (Doc. 10-1, 41:1-12, 21-25.)  It was stipulated that there was a factual basis for the plea.  (Id. at 42.)

The Court concludes that Petitioner has not shown that the BPH considered facts that were not admitted by Petitioner and considered at the initial sentencing hearing.  Petitioner has not alleged specific facts in support of the claim.  Further, Petitioner has not shown that either Petitioner's offense or punishment has been aggravated or increased by the actions of the BPH.

Accordingly, any claims concerning violation of the Ex Post Facto Clause or the Sixth and Fourteenth Amendments based on such factual assertions are without merit and should be denied.

VI.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

VII.  Recommendations

Accordingly, it is RECOMMENDED that:

1)  Petitioner's first, second, and fifth claims be DENIED; and

2)  Petitioner's third and fourth claims be DISMISSED without leave to amend because the claims are not cognizable in a proceeding pursuant to 28 U.S.C. § 2254; and

3)  The Clerk be DIRECTED to enter judgment for Respondent; and

4) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if

served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 3, 2011**                         /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE